IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAMES L. KERFOOT,                          )
SYLVIA F. KERFOOT, and                     )
PAUL CAMES, as Trustee in Bankruptcy       )
for James and Sylvia Kerfoot,              )
                                           )
            Plaintiffs,                     )          Civil Action
                                           )
VS.                                        )          File No. ____1:13-CV-33(WLS)____
                                           )
FNF SERVICING, INC. (D/B/A                 )
LOAN CARE SERVICING                        )
CENTER, INC.), a foreign                   )
corporation,                               )
                                           )
            Defendant.                      )
_____)

**COMPLAINT**

COME NOW the Plaintiffs, JAMES L. KERFOOT , SYLVIA F. KERFOOT, and PAUL

CAMES as Trustee in Bankruptcy for James and Sylvia Kerfoot, and file their Complaint for

Damages against Defendant FNF SERVICING, INC. (D/B/A LOANCARE SERVICING

CENTER, INC.), showing the Court as follows:

JURISDICTION AND VENUE

1.

The individual Plaintiffs are residents of Leesburg, Lee County, Georgia.

2.

Paul Cames is Trustee in Bankruptcy for James and Sylvia Kerfoot, which bankruptcy is

pending in the Bankruptcy Court in the Middle District of Georgia, Albany Division, Case No.

11-10234.

1

3.

Defendant FNF Servicing, Inc. (doing business as Loan Care Servicing Center, Inc). ("Loan Care"), is a Virginia corporation doing substantial business in this district and division, with its principal office address being located in Santa Ana, California, and with its registered agent for service of process in Georgia being C T Corporation System, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361.

4.

Jurisdiction is proper under 28 USC § 1332 in that there is diversity of citizenship.

5.

Jurisdiction is also proper under 28 USC § 1331 in that one of the counts herein involves a federal question under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(k).

6.

Venue is proper under 28 USC § 1391(b)(1) in that Defendant's registered agent is located in this district and Defendant is a corporation that has sufficient contacts to subject it to personal jurisdiction in this district. Venue is also proper under 28 U.S.C § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

7.

The amount in controversy exceeds $75,000.00.

OPERATIVE FACTS

8.

On March 14, 2006, James and Sylvia Kerfoot obtained a home loan from The CIT Group/Consumer Finance, Inc., and in connection therewith the Kerfoots executed a promissory note in the amount of $ 76,000.00.

9.

On the same date, James and Sylvia Kerfoot executed a deed to secure debt to grantee Mortgage Electronic Registration Systems, Inc. ("MERS") (as nominee for The CIT Group/Consumer Finance, Inc.), conveying a security interest in the Kerfoots' home at 1260 Philema Road, Leesburg, Georgia. (Attached hereto as Exhibit 1.)

10.

The CIT Group loan was serviced and billed every month by Vericrest Financial, Inc.

11.

On October 30, 2009, James and Sylvia Kerfoot entered into a refinance loan agreement with Lend America, a New York corporation, to borrow $102,055.00.

12.

The loan with Lend America was entered into for the purpose of paying off the loan to CIT/Vericrest and to pay off some unsecured loans.

13.

Attached as Exhibit 2 is the HUD-1 closing statement entered into on October 30, 2009 where Lend America promised to pay off CIT/Vericrest, certain unsecured loans of James and Sylvia Kerfoot, and loan $10,732.58 to James and Sylvia Kerfoot.

14.

Attached as Exhibit 3 is the note dated October 30, 2009 in the amount of $102,055.00 which James and Sylvia Kerfoot signed on October 30, 2009 to Lend America.

15.

Attached as Exhibit 4 is the security deed which James and Sylvia Kerfoot executed on October 30, 3009 to Lend America, granting it a security interest in their home.

16.

Lend America was supposed to pay off the prior loan to CIT/Vericrest in the amount of $73,863.63 on October 30, 2009 from the proceeds of the $102,055.00 loan.

17.

James and Sylvia Kerfoot made their first loan payment to Lend America on December 2, 2009 in the amount of $697.23 as required by the terms of their note. Attached as Exhibit 5 is a copy of their check.

18.

James and Sylvia Kerfoot made their second loan payment to Loan Care on January 5, 2010 in the amount of $697.73 as required by the terms of their note. Attached as Exhibit 6 is a copy of their check. [In December 2009, Loan Care took over the servicing of this loan as hereinafter set forth.]

19.

James and Sylvia Kerfoot believed that Lend America had paid off the loan on their home to CIT/Vericrest as they were supposed to have done on October 30, 2009.

20.

After making their first two payments on the Lend America loan, James and Sylvia discovered that Lend America had not paid off their prior loan to CIT/Vericrest.

21.

James and Sylvia became delinquent on their loan with CIT/Vericrest and struggled to catch up their payments to CIT/Vericrest.

22.

In November 2009, Lend America closed its doors and was sued by the U.S. government for false practices in lending on FHA loans.

23.

In early December 2009, it became widely known that Lend America was a fraud with articles appearing on the internet such as the attached Exhibit 7.

24.

Homeowners who had been defrauded by Lend America – similar to the Kerfoots – began posting their experiences on the internet. See attached as Exhibit 8.

25.

On December 16, 2009, the Government National Mortgage Association (Ginnie Mae) defaulted Lend America as a servicer of loans and contracted with Loan Care (a division of FNF Servicing, Inc.) to service Lend America's loans.

26.

Included among the loans which Loan Care was to service was the loan James and Sylvia Kerfoot had made to Lend America.

28.

After Loan Care took over the servicing of the Kerfoots' loan with Lend America, it began calling the Kerfoots to pay their monthly payments.

29.

Loan Care also began sending letters to the Kerfoots to make their monthly payments to Loan Care.

30.

Loan Care began sending monthly statements to the Kerfoots showing the payments due to Loan Care.

31.

The Kerfoots (an elderly couple) were confused, worried, and upset over who to pay and were in fear of losing their home.

32.

The Kerfoots engaged a lawyer, Christopher Solomon, to assist them in what to do.

33.

On March 11, 2010, Mr. Solomon wrote a detailed letter to Loan Care explaining that Lend America did not pay off the prior loan to CIT/Vericrest as it was supposed to do. Mr. Solomon's letter is attached as Exhibit 9. (At the time of the filing of this Complaint, only page 1 of Mr. Solomon's letter could be located.)

34.

Notwithstanding Mr. Solomon's letter to Loan Care of March 11, 2010, Loan Care continued in its vigorous efforts to collect from the Kerfoots.

35.

In January 2010, Loan Care began sending monthly statements to the Kerfoots and continued sending statements until sometime in 2012. Attached as Exhibit 10 are some of these monthly statements.

36.

Either before or shortly after Loan Care took over the servicing of Lend America's loans, it became aware that Lend America was a fraudulent company that, in many cases, had not paid off prior loans when it refinanced loans for people.

37.

Early on, Loan Care was aware of this fraud by Lend America and, in some cases, Loan Care agreed to compromise the matter by cancelling the mortgage to Lend America and returning the money which the victim of the fraud had paid toward the mortgage.

38.

Attached as Exhibit 11 is an offer to compromise a fraudulent loan in this manner by Loan Care to a victim of the Lend America fraud in Massachusetts, Carlos and Emily Morales, dated June 25, 2010.

39.

Early on in the servicing of these loans, Loan Care became aware of Lend America's fraud because of numerous lawsuits filed against Loan Care.

40.

Attached as Exhibit 12 is a Complaint filed against Loan Care on January 11, 2011 by Carlos Morales.

7

41.

Numerous other similar lawsuits were filed against Loan Care.

42.

Numerous complaints were made to Loan Care by people in a similar situation as the Kerfoots – where they refinanced their home loan with Lend America and their prior mortgage was not paid off.

43.

Finally, on January 17, 2011, James and Sylvia Kerfoot were forced to file bankruptcy in the Bankruptcy Court for the Middle District of Georgia, Albany Division. Attached as Exhibit 13 is the docket sheet.

44.

Loan Care then began contacting the Kerfoots' bankruptcy attorney trying to work out a plan where the Kerfoots could catch up on their back payments to Loan Care.

45.

Attached as Exhibit 14 is a letter from Loan Care to Greg Clark of Custer & Custer dated February 21, 2011.

46.

Shortly after the Kerfoots filed bankruptcy, Loan Care filed a Motion for Relief from the automatic stay of the Bankruptcy Court seeking permission from the Bankruptcy Court to foreclose on the Kerfoots' home to collect the debt to Lend America.

47.

Attached as Exhibit 15 is the Motion for Relief from Stay filed by Loan Care in the Bankruptcy Court on March 8, 2011.

48.

Mr. Emmett Goodman was engaged by Loan Care as local counsel. Attached as Exhibit 16.

49.

On April 6, 2011, counsel for the Kerfoots in the Bankruptcy Court filed a Response to the Motion and a Counterclaim showing that the Lend America loan was fraudulent in that, among other things, Lend America did not pay off the CIT/Vericrest loan. Attached as Exhibit 17.

50.

Shortly thereafter, on April 12, 2011, Loan Care withdrew its Motion for Relief from the automatic stay seeking permission to foreclose on the Kerfoots' home. Attached as Exhibit 18.

51.

On June 3, 2011, the Kerfoots were discharged from the Bankruptcy Court and no longer were under the protective arm of the Bankruptcy Court. Attached as Exhibit 19.

52.

Four days after receiving the Discharge from the Bankruptcy Court, Loan Care began sending letters to the Kerfoots again threatening to foreclose on their home if they did not pay Loan Care.

53.

Attached as Exhibit 20 is the letter from Loan Care dated June 7, 2011 threatening to foreclose on the Kerfoots' home if they did not pay $12,902.83 before July 8, 2011.

54.

Immediately thereafter, the Kerfoots sent a certified mail letter to Loan Care again informing them that the Lend America loan was a fraud. This letter was sent certified mail on July 25, 2011 and was received by Loan Care on July 27, 2011. Attached as Exhibit 21.

55.

Loan Care continued calling and threatening the Kerfoots with foreclosure if they did not pay Loan Care.

56.

On March 16, 2012, the Kerfoots filed a Motion with the Bankruptcy Court to Reopen their bankruptcy case for the sole purpose of being able to sue Loan Care for the way they treated them.

57.

All of the previous creditors in the Kerfoots' bankruptcy case were served with a copy of the Kerfoots' Motion to Reopen their bankruptcy case.

58.

Loan Care and the two law firms who represented Loan Care in filing the Motion for Relief from the stay in the Bankruptcy Court seeking permission to foreclose on the Kerfoots' home were all duly served with a copy of the Motion to Reopen the Case.

59.

Attached as Exhibit 22 is the Motion to Reopen the case filed on March 16, 2012.

60.

On April 9, 2012, Bankruptcy Judge James D. Walker, Jr. signed an Order reopening the Bankruptcy Case.

61.

The Order reopening the case was also served on Loan Care and its lawyers.

62.

Attached as Exhibit 23 is the Court Order reopening the bankruptcy case.

63.

After the case was reopened, Charlie Gower was appointed by the Bankruptcy Court as special counsel to the Trustee for the purpose of suing Loan Care.

64.

On April 4, 2012, Loan Care offered to pay off the loan to CIT/Vericrest on certain conditions.

65.

The Kerfoots could not accept the offer by Loan Care because it would have immediately placed them in default on their loan with Loan Care.

66.

The offer from Loan Care made in the April 4, 2012 letter was also conditioned on a complete release to Loan Care.

67.

Attached as Exhibit 24 is the letter from Loan Care dated April 4, 2012 containing the conditional offer to pay off CIT/Vericrest.

68.

The April 4, 2012 letter from Loan Care was not sent to the bankruptcy attorneys for the Kerfoots, nor were they copied on the April 4, 2012 letter which was sent to their clients, James and Sylvia Kerfoot.

69.

On June 22, 2012, Loan care again wrote directly to the Kerfoots – this time offering to cancel the Lend America mortgage on their home in exchange for a release to Loan Care.

70.

Attached as Exhibit 25 is the June 22, 2012 Loan Care letter to the Kerfoots.

71.

The June 22, 2012 letter from Loan Care to the Kerfoots is identical to a letter written two years prior to Carlos Morales on June 25, 2010. Attached as Exhibit 11.

72.

The Kerfoots did not "bite" and accept the proposal by Loan Care in their June 22, 2012 letter.

73.

On October 24, 2012, Loan Care wrote to the Kerfoots' bankruptcy attorneys telling them that by not responding, Loan Care would *imply* that the Kerfoots accepted their offer to cancel the mortgage and return the payments in exchange for a release of claims to Loan Care.

74.

Attached as Exhibit 26 is the letter from Loan Care dated October 24, 2012 to the Kerfoots' bankruptcy lawyers.

75.

Thereafter, on December 11, 2012, Loan Care signed a cancellation of the Lend America security deed and filed the cancellation with the Clerk of Superior Court of Lee County, Georgia on December 18, 2012 in Deed Book 1591, Page 33.

76.

Then on January 22, 2013, Loan Care sent a letter to the Kerfoots with two checks of $697.73 each.

77.

Attached as Exhibit 27 is the letter dated January 22, 2013 from Loan Care with the two checks attached.

78.

Because of the actions of Loan Care, the Kerfoots have suffered physically, emotionally, and financially.

79.

Because of the actions of Loan Care, the Kerfoots have worried themselves sick.

<u>COUNT ONE</u>

<u>GEORGIA RICO</u>

80.

Plaintiffs incorporate paragraphs 1 through 79 herein.

81.

Loan Care's conduct as set out above constitutes violations of O.C.G.A. § 16-14-1 et seq. (hereinafter "Georgia RICO".)

82.

Plaintiffs are "persons" within the meaning of the Georgia RICO statute.

83.

Loan Care is a "person" within the meaning of the Georgia RICO statute.

84.

Loan care is an "enterprise" within the meaning of the Georgia RICO statute.

85.

Loan Care, through a pattern of racketeering, or proceeds derived therefrom, has acquired and maintained both an interest in and control of an enterprise and real and personal property including money – in violation of O.C.G.A. § 16-14-4 (a).

86.

Loan Care was associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4 (b).

87.

The enterprise is composed of Loan Care, Lend America, Ginnie Mae ("GNMA"), and the foreclosure lawyers of McCalla Raymer, LLC.

88.

Loan Care also conspired to violate both O.C.G.A. § 16-14-4 (a) and O.C.G.A. § 16-14-4 (b) by, among other things, adopting the goal of furthering or facilitating the criminal activity of Lend America.

89.

In furtherance of its enterprise or enterprises, Loan Care, separately and in concert with its officers, directors, agents, employees, subsidiaries, and parent company, engaged in prohibited and unlawful activity, or endeavored or conspired to engage in prohibited and unlawful activity on two or more occasions. These unlawful acts include, but are not limited to:

   a.   Unlawfully taking and appropriating Plaintiffs' and other persons' money and property in violation of O.C.G.A § 16-8-2 (theft by taking).

14

b.   Unlawfully converting Plaintiffs' and other persons' money and property in violation of O.C.G.A. § 16-8-4 (theft by conversion).

c.   Unlawfully obtaining Plaintiffs' and other persons' money and property by deceitful means and artful practices with the intent to deprive them of their property in violation of O.C.G.A. § 16-8-3 (theft by deception).

d.   Unlawfully sending, causing to be sent, and receiving letters, checks, and other papers and items, including mortgage account statements and collections letters sent through the U.S. Postal Service, for the purpose of executing and attempting to execute Loan Care's fraudulent scheme in violation of 18 U.S.C. § 1341.

e.   Unlawfully causing to be sent and receiving writings (letters and statements) and sound communications (including, but not limited to, telephone calls) for the purpose of executing and attempting to execute Loan Care's fraudulent scheme in violation of 18 U.S.C. § 1343.

f.   Sending deceptive emails in violation of O.C.G.A. § 16-9-101.

90.

Loan Care committed the crime of theft by taking (O.C.G.A. § 16-8-2) on two or more occasions by taking money from Plaintiffs and other persons on fraudulent loans made by Lend America with the intent of depriving the Plaintiffs and other persons of their money.

91.

Loan care committed the crime of theft by conversion (O.C.G.A. § 16-8-3) on two or more occasions by taking money from Plaintiffs and other persons on fraudulent loans made by Lend America knowing that the money they were receiving as payment toward these fraudulent loans would not result in the mortgage being paid off that Lend America failed to pay off when it

made the fraudulent loans to Plaintiffs and other persons. (In other words, Plaintiffs and others would be making loan payments to Loan Care on fraudulent loans in lieu of making payments on the prior legitimate loans on their homes which Lend America did not pay off at closing as promised.)

92.

Loan Care committed the crime of theft by deception (O.C.G.A. § 16-8-3) on two or more occasions by falsely representing to Plaintiffs and other persons that they owed amounts to Loan Care which they did not owe. Loan Care knew these representations to be false, yet they unlawfully appropriated Plaintiffs' and other persons' property and money with the intent of depriving them of their property and money, while all the time knowing that this money would not go toward paying off the prior recorded legitimate mortgage on their home, which Lend America failed to pay at closing.

93.

Loan Care violated 18 U.S.C. § 1341 (mail fraud) by its multiple and continuous use of the U.S. mail in furtherance of its fraudulent scheme, including the sending of monthly statements and collection letters to the Plaintiffs and other persons.

94.

Loan Care violated 18 U.S.C. § 1343 (wire fraud) by its multiple and continuous use of the U.S. wires in furtherance of its fraudulent scheme by, among other things, its collection calls to Plaintiffs and others.

16

95.

Loan Care and its employees and agents used the U.S. mail and wires to continuously send statements, bills, letters, and make telephone calls to Plaintiffs and others falsely representing what they allegedly owed in an effort to collect money that was not owed.

96.

Each act Loan Care engaged in constitutes a separate incident of "racketeering activity" within the meaning of the Georgia RICO statute. The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated, or sporadic acts. They were part of a regular and routine way in which Loan Care conducted its business. The multiple acts constitute patterns of racketeering activity. Loan Care intended to defraud Plaintiffs and others with regard to mortgages secured by their homes as set out herein.

97.

Loan Care engaged in the racketeering activity with the intent, motive, and effect of deriving pecuniary gain. Loan Care targeted Plaintiffs and other persons similarly situated in furtherance of its scheme to defraud.

98.

Loan Care, through its pattern of racketeering activity, directly and indirectly acquired property and money of Plaintiffs and others.

99.

Loan Care and the other members of the enterprise shared the common goal of deriving pecuniary gain by their illegal activities.

17

100.

Loan Care's officers, directors, agents, and employees directly and indirectly participated in the enterprises through a pattern of racketeering activity.

101.

Loan Care's wrongful acts alleged herein proximately caused damage to Plaintiffs. Plaintiffs' injuries flow directly from the predicate offenses set out herein.

102.

Plaintiffs seek to recover all damages allowable as a result of such violations, to include actual damages, including emotional damages, attorneys' fees, treble damages, and punitive damages.

<u>COUNT TWO</u>

<u>FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)</u>

103.

Plaintiffs incorporate paragraphs 1 through 102 herein.

104.

Loan Care violated 15 U.S.C. § 1692 (g) by failing to validate the debt and cease communication with Plaintiffs once they disputed the alleged debt.

105.

Loan Care's conduct and communications with Plaintiffs in the collection of a fraudulent debt and in its attempts to obtain a release of claims against it and others have all been extreme and outrageous and intended by Loan Care to humiliate, embarrass, scare, and worry Plaintiffs, all in violation of 15 U.S.C. § 1692.

18

106.

Loan Care's conduct and communications with Plaintiffs in the collection of a fraudulent debt and in its attempts to obtain a release of claims against it and others violates 15 U.S.C. § 1692 (e) by using false, deceptive, or misleading representations.

## COUNT THREE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107.

Plaintiffs incorporate paragraphs 1 through 106 herein.

108.

Loan Care has committed the tort of intentional infliction of emotional distress by intentionally or recklessly causing severe emotional damages to Plaintiffs.

109.

Loan Care's outrageous and extreme conduct has caused severe and extreme emotional and physical distress to Plaintiffs which no one should have to endure.

## COUNT FOUR

### REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

110.

Plaintiffs incorporate paragraphs 1 through 109 herein.

111.

Loan Care failed to comply with 12 U.S.C. § 2605 (e) in that it failed to properly respond to two or more qualified written requests.

19

COUNT FIVE

BREACH OF CONTRACT

112.

Plaintiffs incorporate paragraphs 1 through 111 herein.

113.

Plaintiffs are third party beneficiaries of written agreements between Ginnie Mae and Loan Care for the servicing of loans made by Lend America which loans were taken over from Lend America in December 2009.

114.

These written agreements provided, among other things, that Loan Care would honestly, fairly, and reasonably conduct its servicing responsibilities as to the Lend America loans taken over by Ginnie Mae after it defaulted Lend America.

115.

Loan Care utterly failed in its responsibilities under these written agreements of which the Plaintiffs were third party beneficiaries.

COUNT SIX

ATTORNEYS' FEES

116.

Plaintiffs incorporate paragraphs 1 through 115 herein.

117.

Loan Care has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to recover attorneys' fees and expenses under O.C.G.A. § 13-6-11 and under 15 U.S.C. § 1692 k(a)(3).

COUNT SEVEN

PUNITIVE DAMAGES

118.

Plaintiffs incorporate paragraphs 1 through 117 herein.

119.

Loan Care is liable under O.C.G.A. § 51-12-5.1 for punitive damages for its willful, malicious, and reckless conduct and for its specific intent to cause harm to the Plaintiffs.

WHEREFORE Plaintiffs pray that they recover the following:

 (1) Actual damages;

 (2) Emotional damages;

 (3) General damages;

 (4) Treble damages;

 (5) Expenses of litigation, including attorneys' fees;

 (6) Punitive damages;

 (7) Such other damages as are appropriate in this case;

 (8) Trial by Jury.

21

This 5th day of March, 2013.

CHARLES A. GOWER, P.C.

/s/ *Charles A. Gower*

CHARLES A. GOWER
Georgia Bar No. 303500
MIRANDA J. BRASH
Georgia Bar No. 475203
DAVID T. ROHWEDDER
Georgia Bar No. 104056

1425 Wynnton Road
P. O. Box 5509
Columbus, GA  31906
(706)324-5685