IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JAMES L. KERFOOT, | ) | |
| SYLVIA F. KERFOOT, and | ) | CIVIL ACTION FILE |
| PAUL CAMES, as Trustee | ) | |
| in Bankruptcy for James and | ) | NO.1:13-CV-33 (WLS) |
| Sylvia Kerfoot, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FNF SERVICING, INC. (D/B/A | ) | |
| LOAN CARE SERVICING | ) | |
| CENTER, INC.),  a foreign | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant FNF SERVICING, INC. (D/B/A LOAN CARE SERVICING CENTER, INC.) a foreign corporation ("LoanCare"), and submits its Brief in Support of its Motion to Dismiss and shows the Court as follows:

## I.    STATEMENT OF FACTS

On March 14, 2006, Plaintiffs James and Sylvia Kerfoot obtained a home loan from The CIT Group/Consumer Finance, Inc. [Doc.1, Compl., ¶ 8].  In connection with the home loan the Kerfoots executed a promissory note in the amount of $76,000.00 and a deed to secure debt to grantee Mortgage Electronic Registration Systems, Inc. ("MERS") (as nominee for The CIT Group/Consumer Finance, Inc.), conveying a security interest in the Kerfoots' home located at 1260 Philema Road, Leesburg, Georgia.  [Doc. 1, Compl., ¶ 9].  On October 30, 2009, James and Sylvia Kerfoot entered into a refinance agreement with Lend America to borrower $102,055.00 and signed a new note (the "Note") and security deed (the "Security Deed").  [Doc. 1, Compl., ¶¶ 11, 14-15].

According to the HUD-1 closing statement for the Kerfoot's refinance (the "Refinance Loan"), funds were to pay off the CIT Group/Consumer Finance, Inc. loan, pay off certain unsecured loans of James and Sylvia Kerfoot, and loan $10,732.58 to James and Sylvia Kerfoot [Doc. 1, Compl., ¶ 13].

In November 2009, Lend America closed its doors and was sued by the U.S. government for false practices in lending on FHA loans.  [Doc. 1, Compl., ¶ 22].  On December 16, 2009, the Government National Mortgage Association ("Ginnie Mae"), terminated Lend America as a servicer of Ginnie Mae loans and contracted with LoanCare to service the Refinance Loan.  [Doc. 1, Compl., ¶ 25].  The Kerfoots made their first loan payment on the Refinance Loan to Lend America on December 2, 2009 and made their second loan payment to LoanCare on January 5, 2010.  [Doc. 1, Compl., ¶¶ 17, 18].  Lend America did not pay off the CIT Group/Consumer Finance, Inc. loan. [Doc. 1, Compl., ¶¶ 20, 33].  LoanCare sent correspondence to the Kerfoots over a period of time regarding the default of the Refinance Loan.  [Doc. 1, Compl., ¶¶ 29, 30, 35].

On January 17, 2011, the Kerfoots filed bankruptcy in the Bankruptcy Court for the Middle District of Georgia, Albany Division.  [Doc. 1, Compl., ¶ 43] .  LoanCare hired the law firm of McCalla Raymer to file a Motion for Relief from the automatic stay seeking permission to foreclose on the Kerfoots' home.  [Doc. 1, Compl., ¶¶ 46, 47].  LoanCare subsequently withdrew its Motion for Relief and the Kerfoots were discharged from the Bankruptcy Court.  [Doc. 1, Compl., ¶¶ 50, 51].

On June 7, 2011, LoanCare sent the Kerfoots a letter seeking to foreclose on the Refinance Loan and the Kerfoots responded.  [Doc. 1, Compl., ¶¶ 52-54].  On December 11, 2012, LoanCare signed a cancellation of the Refinance Loan security deed and filed the cancellation with the Clerk of Superior Court of Lee County, Georgia on December 18, 2012.  [Doc. 1, Compl., ¶75].  On

January 22, 2013, LoanCare sent a letter to the Kerfoots with two checks that represented the two payments the Kerfoots made for the Refinance Loan.  [Doc. 1, Compl., ¶ 76].

## II.      ARGUMENT AND CITATION OF AUTHORITY

Defendant LoanCare moves to dismiss the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) because the Complaint fails to allege facts that state a plausible claim for relief.

### A.      Standard of Review of Motions to Dismiss for Failure to State a Claim.

The Complaint should be dismissed because it fails to meet the minimum pleading standards articulated by the United States Supreme Court in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The Twombly Court retired the often cited standard that a complaint should survive the Rule 12(b)(6) dismissal stage "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 at 561, 127 S. Ct. at 1968 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). The Supreme Court noted that a literal reading of this standard would mean that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Id. (internal quotation marks and brackets omitted). As the Twombly Court explained, this standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563, 127 S. Ct. at 1969.

The Supreme Court revisited the pleading standard in Iqbal. Based on Iqbal, the standard is now that a complaint must state a "plausible" claim for relief. Iqbal, 129 S. Ct. at 1949; see also

Azar v. Nat'l City Bank, 382 U.S. Appx. 880, 2010 WL 2381049 (C.A.11 (Fla.)) and Warren v. Bank of Am., 2011 WL 2116407 (S.D. Ga., 2011).  For a claim to be plausible, the claimant's pleading must contain sufficient factual content to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. While factual allegations are treated as true, those factual allegations must be more than "naked assertions" of wrongdoing. Id.  In reviewing the sufficiency of a complaint, a court should first eliminate all conclusory allegations before assuming the veracity of any remaining factual allegations and determining "'whether they plausibly give rise to an entitlement to relief.'"  American Dental Association v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950) In other words, for a complaint to survive a motion to dismiss, the nonconclusory, "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Azar, 382 U.S. Appx. 880, 2010 WL 2381049 (C.A.11 (Fla.)) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).

       B.      Plaintiffs Fail to State a Claim under Georgia RICO.

Plaintiffs' Count 1 arises out of alleged violations of O.C.G.A. § 16-14-1 et.seq., the Georgia Racketeer Influenced Corrupt Organization Act or RICO ("Georgia RICO").  Specifically, Plaintiffs claim that LoanCare violated O.C.G.A. § 16-8-2 (theft by taking), O.C.G.A. § 16-8-4 (theft by conversion), O.C.G.A. §16-8-3 (theft by deception), as well as federal laws 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  A Georgia RICO conviction requires proof that a defendant has committed two or more offenses of the kind included in RICO statute; it does not require state to prove all of alleged predicate offenses.  Mosley v. State, 253 Ga.App. 710, 560 S.E.2d 305 (2002).

Regardless of the specific statute Plaintiffs rely upon in their underlying predicate acts, there are common elements that they must establish for every Georgia RICO cause of action. Even though Plaintiffs dedicate over 23 paragraphs of their Complaint to RICO, they have not sufficiently pled the requisite facts to establish any claim against LoanCare under Georgia RICO. Therefore, this count does not enjoy the presumption of truth under Twombly and Iqbal and should be dismissed.

    1.  Plaintiffs Fail To Establish A Pattern of Racketeering As They Do Not Plead the Predicate Acts with Specificity.

    a.  Theft by Taking.

O.C.G.A. § 16-8-2 governs the crime of theft by taking and defines the offense as, "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Brown v. State, 302 Ga.App. 641, 692 S.E.2d 9 (2010) (The gravamen of the offense of theft by taking as alleged is the taking of the property of another against the will of such other, regardless of whether the property is taken or appropriated and the manner of the taking or the appropriation.) See also, Christian v. State, 288 Ga.App. 546, 654 S.E.2d 452 (2007) (Theft by taking occurs when a person, while acting as a fiduciary and in breach of that fiduciary obligation, unlawfully takes any property of another with the intention of depriving the other person of the property, regardless of the manner in which the property is taken or appropriated.)

Plaintiffs allege that LoanCare committed theft by taking money from Plaintiffs with the intent of depriving the Plaintiffs and other persons of their money. [Doc. 1, Compl., ¶ 90]. The two payments made (one to Lend America and one to LoanCare), were in December, 2009 and January, 2010. It is clear from the allegations of the Complaint that LoanCare was not aware that Lend

America failed to pay off the prior lender in the Kerfoots case until after the two payments were made. [Doc. 1, Compl., ¶ 33]. Assuming what Plaintiffs allege is true, it would be impossible for LoanCare to have accepted payments from Plaintiff with the intent of depriving the Plaintiffs and other persons of their money.

Furthermore, Plaintiffs do not specifically allege how LoanCare had the intent to deprive Plaintiffs of their money particularly where it is alleged Lend America was the entity who failed to pay off the loan. Plaintiffs are fully aware that LoanCare took over the subservicing after the refinance. LoanCare was not involved in the origination of the Refinance Loan nor in the disbursements pursuant to the HUD-1. Finally, Defendants Plaintiffs received cash and had credit card debt paid from the Refinance Loan. These facts appear to contradict any intent of LoanCare to deprive Plaintiffs of their money. Plaintiffs simply regurgitated the elements of the statute in hopes that it would be sufficient to meet the pleadings standards set forth in Twombly and Iqbal.

b.      <u>Theft by Conversion and Theft by Deception.</u>

O.C.G.A. § 16-8-3 defines theft by conversion and theft by deception as, "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." <u>Campbell v. State</u>, 286 Ga.App. 72, 648 S.E.2d 684 (2007) (To make a prima facie case of theft by deception, based on a promise of service, the state must prove, among other things, (1) a definite contract, (2) a failure to perform the contracted-for services without good and sufficient cause, and (3) a failure to return the money advanced under the contract without good and sufficient cause.) <u>See</u> <u>also</u>, <u>Scott v. State</u>, 277 Ga.App. 876, 627 S.E.2d 904 (2006) (A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.)

Plaintiffs allege that LoanCare took money from Plaintiffs and made false representations while knowing that this money would not go toward paying off the prior recorded legitimate mortgage on their home, which Lend America failed to pay at closing.  [Doc. 1, Compl., ¶¶ 91, 92]. Plaintiffs' allegations again fail to state a claim against LoanCare.  As set forth above, Plaintiffs do not allege that LoanCare had any knowledge that Lend America had failed to pay off the original lender in the Kerfoot refinance until after the two payments were made.  Therefore, LoanCare could not have accepted payments knowing that payments were still due to the Kerfoots original lender. Plaintiffs fail to establish predicate acts of theft by taking and theft by deception.

c.      <u>Mail Fraud/Wire Fraud.</u>

In an attempt to establish a pattern of racketeering as to LoanCare, Plaintiffs attempt to allege the predicate acts of mail fraud and wire fraud. [Doc. 1, Comp., ¶¶ 93, 94]  The federal mail fraud statutes prohibit the use of the mail for purpose of "carrying out any scheme or artifice to defraud. A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."  <u>Lum v. Bank of America</u>, 361 F.3d 217, 223 (3rd Cir. 2004). (finding conclusory allegations that the U.S. mails were used in connection with a fraudulent scheme and in furtherance of the fraudulent scheme and conspiracy were not sufficient to satisfy Rule 9(b)).  Because one of Plaintiffs' predicate acts for establishing a pattern of racketeering is mail fraud, Plaintiffs must comply with the heightened pleading standards of Rule 9(b).  <u>Robinson v. Fountainhead Title Group, Corp.</u>, 252 F.R.D 275, 279-280 (D.Md. 2008).

To meet the Rule 9 heightened pleading requirement for mail fraud as a predicate act to establishing a pattern of racketeering, Plaintiffs must plead specifically "the time, place, and contents of the false representations, as well as the identity of the person making the

-7-

misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiffs only have three short paragraphs in their Complaint related to these predicate acts. [Doc. 1, Compl. ¶¶ 93-95]. Nowhere in these three paragraphs do Plaintiffs specify which mailings or collection calls violated the act. In fact, the Complaint is absent of reference to any specific phone call. Rather Plaintiffs, merely quote from the relevant RICO statute and note that mailings and collection calls were made in an effort to collect money that was not owed. Plaintiffs are attempting to utilize the easiest of predicate acts in their attempts to reap the benefits of the treble damages provided by Georgia RICO. Plaintiffs' lack of specificity with respect to the predicate racketeering act of mail fraud and wire fraud is fatal to all of the Georgia RICO counts and, as such, Count 1 must be dismissed.

C.      Plaintiffs Fail to State a Claim under the FDCPA.

In order to state a claim under the FDCPA against LoanCare, Plaintiff must allege facts demonstrating that: (1) they were debt collectors; (2) they were attempting to collect from Plaintiffs James Kerfoot and Sylvia Kerfoot on their consumer debt; and (3) they were engaged in some act prohibited by the FDCPA or failed to disclose information required by the FDCPA. See Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1357 (N.D. Ga. 2008). While Plaintiffs state that Defendant is a debt collector and that it violated the provisions of the FDCPA, they make no specific factual allegations that support those bare conclusions.

Therefore, Plaintiffs' FDCPA claim does not meet the pleading standard established by Twombly and Iqbal and is due to be dismissed. Aside from the pleading defects, however, the Plaintiffs cannot establish a FDCPA claim against LoanCare.

1.  Plaintiffs' FDCPA Claim is Barred by the Statute of Limitations.

Pursuant to 15 U.S.C. § 1692k(d), an action to enforce any liability under the FDCPA may be brought within one (1) year from the date on which the violation occurs. Maloy v. Phillips, 64 F.3d 607 (11th Cir. 1995); Kuria v. Palisades Acquisition XVI, LLC, 752 F.Supp.2d 1293, (N.D. Ga., 2010).

It appears from the allegations in the Complaint that the last written communication from LoanCare to the Kerfoots regarding default of the Refinance Loan and possible foreclosure is dated June 7, 2011. [Doc. 1, Compl., ¶ 53]. None of the subsequent written communications from LoanCare to the Kerfoots, constitute attempt to collect a debt or seek to foreclose. Furthermore, the latest monthly statement attached as Exhibit 10 to the Complaint, is dated October 17, 2011. [Doc. 1, Compl., Exhibit 10]. Plaintiffs filed their Complaint on March 5, 2013, more than a year after the last communication regarding default and/or foreclosure. Therefore, Plaintiffs' FDCPA claim is barred by the statute of limitations.

2.  LoanCare is Not a Debt Collector.

The FDCPA applies only to debt collectors; it does not apply to creditors. Smith v. Indymac Fed. Bank, 2010 WL 5490728, *6 (N.D. Ga., 2010) ("It is well established that the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers.") (citing 15 U.S.C. § 1692a(6) and Humphrey v. Washington Mutual Bank, F.A., 2007 WL 1630639 (N.D. Ga., 2007). Defendant LoanCare is the current servicer of the subject loan for Ginnie Mae. [Doc. 1, Compl., ¶ 25]. As the mere servicer of the subject loan, the FDCPA does not apply to LoanCare and Plaintiffs' FDCPA claim against LoanCare should be dismissed with prejudice.

Additionally, 15 U.S.C. § 1692a(6)(F) provides that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed

-9-

or due another to the extent such activity… (iii) concerns a debt which was not in default at the time it was obtained by such person." Here, LoanCare began servicing the loan on December 16, 2009 [Doc. 1, Compl., ¶ 25]. The Kerfoots made their first loan payment to Lend America on December 2, 2009 and made their second loan payment to LoanCare on January 5, 2010. [Doc. 1, Compl., ¶¶ 17, 18]. Pursuant to paragraph 9 of the Security Deed, "Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment." [Doc. 1, Compl., Exhibit 4]. Pursuant to paragraph 4 of the Note, the payments are due on the 1st of each month. [Doc. 1, Compl., Exhibit 3]. Based upon these facts, the loan went into default on March 1, 2010, the due date for the next monthly payment after non-payment (February, 2010). Even if the Kerfoots had made no payments, the earliest date of default would have been January 1, 2010, the due date for the next monthly payment after non-payment (December, 2009). Under either scenario, default occurred after LoanCare began servicing the loan in December of 2009. Consequently, under 15 U.S.C. § 1692a(6)(F), LoanCare is not a "debt collector" and therefore Plaintiffs claim for violation of the FDCPA must fail.

        D.        <u>Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress</u>.

A claim for intentional infliction of emotional distress much be premised upon conduct that goes beyond "all possible bounds of decency" so as to be regarded as "atrocious and utterly intolerable in a civilized society." <u>Cook v Covington Credit of Georgia</u>, 290 Ga. App. 825, 660 S.E.2d 855, 858 (2008). The conduct at issue must inflict emotional distress so severe that "no reasonable person could be expected to endure it." <u>Id</u>. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a matter of law. <u>Taylor v. Gelfand</u>, 233 Ga.App. 835, 505 S.E.2d 222 (1998). The law will

intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it. Ingram v. JIK Realty Co., 199 Ga.App. 335, 404 S.E.2d 802 (1991).

Plaintiffs do not specifically state what intentional acts LoanCare committed to cause severe emotional distress. [Doc. 1, Compl., ¶¶ 108, 109]. Defendants are left to guess or assume that Plaintiffs intended to assert that all alleged factual acts combined were done knowingly, willingly and intentionally, and were reckless, extreme and outrageous. Plaintiffs also failed to allege any facts supporting their bare assertions that they suffered emotional distress. Plaintiffs failed to describe how the alleged emotional distress manifested itself, how they have been physically or emotional impacted, whether they sought medical treatment and if so, what medical treatment was rendered. The vague nature of the allegations in this cause of action should not be allowed as they do not meet the pleading standards set forth in Twonbly and Iqbal.

Further, Defendants submit that the underlying causes of action must fail for the reasons set forth herein. If Plaintiffs do not prevail on those underlying claims, clearly the resulting emotional distress should not survive. Therefore, Plaintiff's claim for intentional infliction of emotional distress must be dismissed with prejudice.

E.      Plaintiffs Fail to State a Claim for Violation of RESPA.

Plaintiffs generally allege in their Fourth Count that LoanCare failed to comply with the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e), in that it failed to properly respond to two or more qualified written requests. [Doc. 1, Compl., ¶¶ 17, 18]. There are no supporting factual allegations in the Complaint wherein Plaintiffs allege that qualified written requests were sent to LoanCare. Further, there are no supporting factual allegations wherein Plaintiffs claim LoanCare failed to respond to qualified written requests. Finally, there are no documents in the exhibits filed with the Complaint that contain any qualified written requests. Without specific

factual allegations that identify when the qualified written requests were sent, to who they were addressed with proof of receipt, there can be no plausible claim for relief and must therefore be dismissed. Twombly and Iqbal. See also, Frizile v. EMC Mortg. Corp., 382 Fed. Appx. 833, 836-837 (11th Cir. 2010) upholding dismissal of Plaintiff's RESPA count where Plaintiff did not raise a reasonable expectation of, and render plausible" claims brought under RESPA). Furthermore, Plaintiffs' failure to properly plead injuries or damages resulting from LoanCare's alleged failure to respond to a qualified written request is fatal to their RESPA count. Jenkins v. BAC Home Loan Servicing, 822 F.Supp.2d 1369, 1376-1377 (M.D. Sept. 29, 2011) (dismissing REPSA counts where Plaintiffs allegations of RESPA violations were vague and did not "establish the necessary causal link between his allegations and his claim for damages….which is fatal to Plaintiff's RESPA claim.").

F.     Plaintiffs Fail to State a Claim for Breach of Contract.

Plaintiffs allege that the existence of servicing agreement between Ginnie Mae and LoanCare, but they fail to either attach it as an exhibit or make any reasonable attempt to describe the agreement or its supposed terms. Instead, Plaintiffs merely guess as to the terms of the servicing agreement, assuming one exists. [Doc 1, Comp., ¶¶ 113, 114]. Without any knowledge, Plaintiffs summarily allege that they are third party beneficiaries without any knowledge of whether the servicing agreement conveys any third party beneficiary rights. [Doc 1, Comp., ¶¶ 113, 115].

As a general rule, an action on a contract, whether the contract is expressed, implied, by parol, under seal, or of record, shall be brought in the name of the party in whom the legal interest in the contract is vested. O.C.G.A. § 9-2-20; O'Leary v. Costello, 169 Ga. 754, 151 S.E. 487 (1930); Fulton Co. Board of Assessors v. Saks Fifth Ave., Inc., 248 Ga.App. 836, 547 S.E.2d 620 (2001). Proper parties to bring an action on a contract are the parties who, in regard to the subject matter of

the contract, have given consideration or exchanged mutual promises of performance. American Fletcher Mortg. Co. v. First American Inv. Corp., 463 F.Supp. 186 (N.D Ga. 2003). Additionally, O.C.G.A. § 9-2-20(b) states, "A third-party beneficiary can bring a claim for breach of contract, but the "third-party beneficiary must be the intended beneficiary of the contract." The mere fact that a third party would benefit incidentally from the performance of the contract is not alone sufficient to give such person standing to sue on the contract." Hubbard v. Dept. of Transp., 256 Ga.App. 342, 568 S.E.2d 559 (2002).

Both the Georgia Court of Appeals and the 11th Circuit Court have considered the issue of whether third party beneficiary rights were conferred to mortgagors by the Freddie Mac Single-Family Seller/Servicer Guide and the Federal Home Affordable Modification Program. Though not technically servicing agreements as we have present in this case, the Freddie Mac Guide and federal HAMP are analogous as they are examples of investor-servicer contracts. In Deerman v. Fed. Home Loan Mortgage Corp., 955 F.Supp. 1393 (N.D.Ala.1997), aff'd, 140 F.3d 1043 (11th Cir.1998), the 11th Circuit rejected the argument that a mortgagor has third-party beneficiary status under the Freddie Mac Single-Family Seller/Servicer Guide. As the court noted, "no provision in the Guide indicates any intent on the part of the FHLMC that third parties have a right to enforce it." Further, the court found that "the provisions in question were written primarily to ensure that the FHLMC was protected by mortgage insurance, and any benefit claimed by the plaintiffs is incidental." Thus, Freddie Mac "did not intend to and has not created an enforceable right to cancel [private mortgage insurance]," and borrowers were "not intended third-party beneficiaries of the mortgage servicing guidelines set forth in the Guide."

In U.S. Bank v. Phillips, 318 Ga.App. 819, 734 S.E.2d 799 (2012), a mortgagor brought action against mortgagee for breach of contract, breach of the covenant of good faith and fair

dealing, negligence, and wrongful foreclosure, seeking damages and an injunction to prevent foreclosure, and alleging that mortgagee failed to properly evaluate his request for a loan modification under the federal Home Affordable Modification Program (HAMP). The Court found Mortgagor lacked standing to bring action against mortgagee to enforce Home Affordable Modification Program (HAMP) as a third-party beneficiary either under federal or Georgia state law; HAMP was not intended to create a right of enforcement by homeowners as third-party beneficiaries as held in several Federal decisions. See also, Finch v. Bank of America, No. 3:12–cv–14(CAR), 2012 WL 1188275, at *2–3, 2012 U.S. Dist. LEXIS 49294, at *4–6 (M.D.Ga. April 9, 2012) (noting that "a third-party beneficiary status of a mortgagor within the Agreement has not been recognized by any court in the Eleventh Circuit[.]")

Further, in In re Canellas, 2012 WL 868772 (M.D. Florida March 14, 2012). In Canellas, the Court agreed with the reasoning in Correia v. Deutsche Bank National Trust Co., 452 B.R. 319 (B.A.P. 1st Cir.2011), where a debtor attempted to assert third-party beneficiary rights based on a pooling and servicing agreement between a securitized trust holding the debtor's mortgage and its servicer. Like the court in Correia, it was held that the debtor lacked standing to challenge compliance with the pooling and servicing agreement because the debtor was not a party or third-party beneficiary to the agreement, nor was he an investor who purchased securities based upon the pooled mortgages. Accordingly, the debtor lacked prudential standing because he was attempting to assert the rights and interests of a third party, not his own.

Plaintiffs have failed to allege any facts that support their entirely speculative guess that the servicing contract, even assuming there is one, provides any rights to third parties to enforce. The legal interest in the servicing agreement is not vested in Plaintiffs and they have not given any consideration or exchanged a mutual promise of performance in exchange for it, assuming it exists.

Consequently, Plaintiffs lack standing to assert either a direct beneficial relationship to the servicing agreement between Ginnie Mae and LoanCare, or a third party beneficiary status, and their breach of contract claim must be dismissed with prejudice.

        F.        <u>Plaintiffs are Not Entitled to Attorney's Fees.</u>

O.C.G.A. § 13-6-11 addresses the recovery of attorney's fees and litigation expenses and provides as follows:

> The expenses of litigation generally shall not be allowed as part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Unless expressly authorized by special statute, attorneys' fees are recoverable only under this section. <u>Bankers Fidelity Life Insurance Co. v. Oliver</u>, 106 Ga. App. 305, 126 S.E. 887 (1962).

Plaintiffs fail to state a claim on all of their causes of action as set forth herein. Because their underlying causes of action must be dismissed, their claim for attorney's fees must also be dismissed. Moreover, there is no evidence to support a finding that LoanCare acted in bad faith, has been stubbornly litigious, or has caused Plaintiffs unnecessary trouble and expense. LoanCare does acknowledge some communication regarding the Refinance Loan did occur before, during and after Plaintiffs' bankruptcy case. LoanCare also recognizes that it may not have acted as quickly as Plaintiffs might have liked in ceasing its communications, but LoanCare did not commence foreclosure proceedings and withdrew its Motion for Relief in the bankruptcy case. LoanCare went so far as to cancel the Refinance Loan security deed, thus forever relieving the Plaintiffs of the Refinance Loan obligation notwithstanding the Refinance Loan appears to have been used in part to pay off other debts of the Plaintiffs as well as resulting in an apparent cash payment at closing to the Plaintiffs. Such actions do not constitute bad faith or stubbornly litigious conduct, nor have they

caused Plaintiffs unnecessary trouble and expense.  Consequently, Plaintiffs' request for an awarded of their attorney's fees and costs should be denied.

G.      Plaintiffs are Not Entitled to Punitive Damages.

O.C.G.A. § 51-12-5.1 governs punitive damages in Georgia and states as follows:

(b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscience indifference to consequences.

Consequently, punitive damages cannot be imposed without a finding of some form of willful misconduct.  Hillman v. General Motors Acceptance Corp., 210 Ga. App. 837, 437 S.E. 2d 803 (1993).  Negligence, even gross negligence, is inadequate to support a punitive damage award. Colonial Pipeline Co. v. Brown, 258 Ga. 115, 365 S.E. 2d 827 (1988).  Tower Financial Services, Inc. v. Smith, 204 Ga. App. 910, 423 S.E. 2d 257 (1992).

Because Plaintiffs' underlying causes of action must be dismissed for the reasons set forth herein, their claim for punitive damages must also be dismissed.  Furthermore, in this case, there is simply no evidence (much less clear and convincing evidence) that the Defendant's actions amounted to willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscience indifference to consequences.  No evidence exists in this case to show that any action by the Defendant rose to the level sought to be punished under O.C.G.A. § 51-12-5.1.

The simple truth is that Plaintiffs defaulted under the terms of the Note and the Security Deed and it was subsequently learned that the originating lender Lend America, failed to pay off Plaintiffs prior lender CIT Group/Consumer Finance, Inc.  LoanCare attempted to negotiate a resolution with Plaintiffs and cancelled the Security Deed and returned the two payments Plaintiffs made on the subject loan.  The actions of LoanCare were not willful, malicious, fraudulent,

oppressive and does not show an entire want of care that would raise the presumption of conscience indifference to the consequences. Consequently, Plaintiffs are not entitled to any damages and are clearly not entitled to punitive damages.

WHEREFORE, Defendant LoanCare prays that this honorable Court dismiss Plaintiffs' Complaint WITH PREJUDICE.

Respectfully submitted this 29th day of March, 2013.

BROCK & SCOTT PLLC

By:    /s/ Kyle S. Kotake
       Kyle S. Kotake
       Georgia Bar No. 428697
       4360 Chamblee Dunwoody Road, Suite 310
       Atlanta, Georgia  30341
       (404) 789-2661 Ext. 3306
       (770) 817-8882 (facsimile)
       kyle.kotake@brockandscott.com
       *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that a precise copy of the above **BRIEF IN SUPPORT OF**

**MOTION TO DISMISS** was filed ECF, automatically sending electronic mail notice to counsel

below:

Charles A. Gower, Esq.
1425 Wynnton Road
P.O. Box 5509
Columbus, GA 31906
Charlie@CAGower.com

Miranda J. Brash, Esq.
1425 Wynnton Road
P.O. Box 5509
Columbus, GA 31906
Miranda@cagower.com

David Rohwedder, Esq.
1425 Wynnton Road
P.O. Box 5509
Columbus, GA 31906
david@cagower.com

This 29th day of March, 2013.

                                        /s/ Kyle S. Kotake
                                        Kyle S. Kotake
                                        Georgia Bar No. 428697
                                        *Attorneys for Defendant*

Brock & Scott PLLC
4360 Chamblee Dunwoody Road, Suite 310
Atlanta, Georgia  30341
(404) 789-2661 Ext. 3306
(770) 817-8882 (facsimile)
kyle.kotake@brockandscott.com