**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| JAMES L. KERFOOT and SYLVIA F. KERFOOT, : : : | |
| Plaintiffs, : : | |
| v. : : | CASE NO.: 1:13-cv-33 (WLS) |
| FNF SERVICING, INC. (d/b/a LOAN CARE SERVICING CENTER, INC.), A foreign corporation, : : : : | |
| Defendant. : : | |

### ORDER

Before the Court is FNF Servicing, Inc.'s Motion to Dismiss. (Doc. 5.) For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

### I. PROCEDURAL BACKGROUND

This case is brought by Plaintiffs James and Sylvia Kerfoot against Defendant FNF Financing, Inc., doing business as Loan Care Servicing Center, Inc. (LoanCare), for its attempts to collect payment on an allegedly fraudulent loan. The Kerfoots assert claims against LoanCare under the Georgia RICO statute, the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, and for breach of contract and intentional infliction of emotional distress.

The facts, as alleged in the Complaint, are the following. On March 14, 2006, the Kerfoots obtained a home loan from CIT Group/Consumer Finance, Inc. for $76,000. On October 30, 2009, the Kerfoots refinanced their home loan with Lend America, which promised to pay off the Kerfoots' home loan. After entering the refinancing agreement, the Kerfoots began paying Loan America. Unbeknownst to the Kerfoots,

1

however, Loan America never paid off their home loan. They soon became delinquent with CIT Group and struggled to catch up on payments.

In November 2009, Loan America ceased operations and was sued by the federal government for false lending practices. The Government National Mortgage Association (Ginnie Mae) defaulted Lend America as a loan servicer and contracted with LoanCare to service Loan America's loans.

LoanCare then began its attempts to collect on the Kerfoots' Lend America loan. It began calling and mailing the Kerfoots for monthly payments. The Kerfoots contacted a lawyer, Christopher Solomon, to help. On March 11, 2010, Solomon wrote LoanCare, explaining that Lend America never paid off the CIT Group Loan. Nevertheless, LoanCare continued its attempts to collect payments on the loan.

The Kerfoots allege that LoanCare knew that many of the Loan America loans were fraudulent. According to the Kerfoots, Loan America's fraud was well known and appeared in Internet articles. Additionally, numerous borrowers complained about their loans and had sued LoanCare. In a similar case, LoanCare agreed to cancel the loan with a couple that had been similarly defrauded by Loan America.

On January 17, 2011, the Kerfoots filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Georgia, Albany Division. LoanCare then began contacting the Kerfoots' bankruptcy attorney to develop a plan for the Kerfoots to make good on past due payments. On March 8, 2011, LoanCare filed a Motion for Relief from the Bankruptcy Court's automatic stay to foreclose on the Kerfoots' home. On April 6, 2011, counsel for the Kerfoots responded to the motion, arguing that the Lend America loan was fraudulent and that it never paid off the CIT Group loan. About a week later, LoanCare withdrew its motion for relief.

On June 3, 2011, the Kerfoots were discharged from Bankruptcy Court. Four days later, LoanCare began sending letters threatening foreclosure if they did not make payments. In a June 7, 2011 letter, LoanCare threatened to foreclose if the Kerfoots did not pay $12,902.83 by July 8, 2011. The Kefoots responded by sending a certified letter to LoanCare, again explaining that the Lend America loan was fraudulent. LoanCare continued requesting payment and threatening to foreclose.

On March 16, 2012, the Kerfoots filed a motion with the Bankruptcy Court to re-open the bankruptcy case "for the sole purpose of being able to sue LoanCare for the way [it] treated them." Bankruptcy Judge James Walker reopened the case. On April 4, 2012, LoanCare wrote the Kerfoots directly—and did not copy the Kerfoots' attorney—explaining that Ginnie Mae was willing to pay off the CIT Group Loan. The letter explained the proposal would release Ginnie Mae and LoanCare of all liability and would apply all payments to the Lend America Loan. The Kerfoots did not accept the offer because acceptance would have put them in default with LoanCare.

On June 22, 2012, LoanCare again wrote the Kerfoots directly, this time offering to cancel the Lend America loan in exchange for a complete release of liability with LoanCare. On October 24, 2012, LoanCare wrote to the Kerfoots' bankruptcy attorney to tell them that, in the absence of a response, LoanCare would assume the Kerfoots accepted their offer to cancel the Lend America loan and return their payments. LoanCare then on December 18, 2012, canceled the Lend America security deed and mailed the Kerfoots their two previous payments.

## II.     STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A Motion to Dismiss

a Plaintiff's complaint under Rule 12(b)(6) should not be granted unless the Plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint

### III. DISCUSSION

4

### A. RICO

Count One of the Kerfoots' Complaint alleges LoanCare violated the Georgia Racketeer Influenced and Corrupt Organizations Act by committing the predicate offenses of theft by taking, theft by conversion, theft by deception, mail and wire fraud, and by sending deceptive e-mails.  LoanCare now moves to dismiss Count One on the grounds that the Kerfoots have failed to state claims of theft or mail or wire fraud. The Court disagrees and finds that the Kerfoots have stated a claim in Count One. Nevertheless, the Court dismisses the predicate acts of mail and wire fraud for the Kerfoots' failure to plead them with particularity.

The Georgia RICO Act makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4. A "pattern of racketeering activity" must consist of at least two instances of a racketeering activity. *Smith v. Chemtura Corp.*, 676 S.E.2d 756, 761 (Ga. Ct. App. 2009) (quoting *All Fleet Refurnishing v. W. Ga. Nat'l Bank*, 634 S.E.2d 802, 805 (2006)). All of the alleged predicate acts are enumerated racketeering activities under the Georgia code.

### 1. Theft by Taking under Georgia law

LoanCare claims the Kerfoots have failed to allege the predicate act of theft by taking because "[i]t is clear from the allegations . . . that LoanCare was not aware that Lend America failed to pay off the prior lender until after the two payments were made" and thus "it would be impossible for LoanCare to have accepted payments from Plaintiff[s] with the intent of depriving [them] of their money." Further because the Com-

plaint alleges it was Lend America that failed to pay off the loan and LoanCare was not involved in the refinancing, LoanCare asserts the allegations contradict any claim it had intent to unlawfully deprive the Kerfoots of their property. These arguments are unpersuasive.

Under Georgia law, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." O.C.G.A. § 16-8-2. Intent is a necessary element of the offense. *Edens v. State*, 397 S.E.2d 612, 614 (Ga. Ct. App. Oct. 3, 1990). The accused's intent can be inferred from "words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted." *Adams v. Georgia*, 644 S.E.2d 426, 429 (Ga. Ct. App. 2007) (quoting *Palmer v. Georgia*, 533 S.E.2d 802, 803 (Ga. Ct. App. 2000)). Because the term "regardless of the manner in which the property is taken or appropriated" is a catch-all provision, theft by taking is broad enough to encompass theft by deception and theft by conversion. *Bearden v. Georgia*, 728 S.E.2d 874, 877 (Ga. Ct. App. 2012). Thus, although the "evidence must show that the requisite intent . . . was present at the time of the taking," *Brown v. State*, 692 S.E.2d 9, 11 (Ga. Ct. App. 2010), a person may unlawfully retain or keep legally acquired property, *see Bearden*, 728 S.E.2d at 877–78.

The allegations in the complaint are sufficient to state a claim of theft by taking. The complaint states the Kerfoots made two payments on the allegedly fraudulent loan between December 2009 and January 2010. Before LoanCare acquired servicing rights on Lend America's loans, Lend America's fraud had become "widely known" and the company had been sued by the United States. Even if LoanCare did not know at the time

6

of the payments that the Kerfoots' loan was fraudulent, the Kerfoots and their attorneys repeatedly informed LoanCare that Lend America had failed to pay off the CIT Group loan. Despite that, LoanCare for years kept the Kerfoots' money and threatened the couple with foreclosure. It was not until the Kerfoots threatened suit that LoanCare ceased its efforts, instead seeking directly from the Kerfoots a complete release of liability.

Because LoanCare challenges the acts of theft by deception and conversion on the same ground, a lack of intent, the Court denies LoanCare's challenge as to all three theft statutes.

### 2. Mail and Wire Fraud

LoanCare also argues the complaint fails to state a violation of mail and wire fraud under 18 U.S.C. §§ 1341, 1343. A claim of mail fraud requires a showing that the accused (1) intentionally participated in a scheme to defraud and (2) used the mails to further that scheme. *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (quoting *United States v. Brown*, 40 F.3d 1218, 1221 (11th Cir. 1994)). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.*

Additionally, a RICO claim predicated on mail and wire fraud must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). The Eleventh Circuit has held that pleading a claim of mail or wire fraud in a civil RICO case requires allegations showing "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the

7

alleged fraud." *Id.* (*quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

The Court agrees with LoanCare that the Kerfoots have failed to plead wire fraud or mail fraud with particularity. The Complaint merely states that LoanCare violated 18 U.S.C. §§ 1341, 1342, "by its multiple and continuous use of the" the U.S. Mail or the U.S. wires "in furtherance of its fraudulent scheme," which included sending monthly statements and collection letters and by making collection calls. The Complaint does not allege the precise statements, documents, or misrepresentations at issue, nor does it describe the time, place, and person responsible for the statements. It does not explain how the Kefoots were misled and what LoanCare gained from the misrepresentation. Although the Kerfoots claim that all of the mailings violated the acts, pleading with particularity requires more than blanket assertions. They did not identify any specific deceptive content of the communications, nor did they describe how the content misled them, as required under Eleventh Circuit law. *See American Dental Ass'n*, 605 F.3d at 1291–92.

For those reasons, the Kerfoots have not stated violations of wire or mail fraud.

### B. Fair Debt Collection Practices Act

The Kerfoots base their second claim for relief on the Fair Debt Collection Practices Act (FDCPA), which the Parties agree carries a one-year statute of limitations. LoanCare moves to dismiss the claim as untimely filed because the last attempts to collect the debt, according to the Complaint, occurred in June and October 2011. The Complaint was filed March 5, 2013. In response, the Kerfoots argue their claim was timely because they reopened their bankruptcy case prior to filing suit and because they allege mailings and collection calls violated the FDCPA.

> Section 108(a) of the bankruptcy code provides:
>
> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

11 U.S.C. § 108. The Kerfoots allege that their motion to reopen the bankruptcy case was an "order of relief" under § 108(a)(2) extending the statute of limitations by two years. In the case of voluntary bankruptcy petitions, however, the "order of relief" is the filing of the bankruptcy petition. 11 U.S.C. § 301(b). "The date of closing the estate has no significance in this regard, hence a suit by the trustee ordinarily could not be instituted after two years have elapsed since the order for relief, irrespective of the later reopening of the estate." 1-108 *Collier Bankruptcy Manual* P 108.02 (4th ed.). *Cf. Tibbetts v. Eckert Seamans Cherin & Mellott*, 262 B.R. 448, 450 (W.D. Pa. 2001) (rejecting argument that § 108(a) ran from the date of the petition's dismissal because the commencement of the case is the "order of relief" within the meaning of the statute). The Kerfoots have not cited any authority to the contrary.

In an obvious tell, the Kerfoots claim that, notwithstanding the bankruptcy code, their claim is timely because their FDCPA claim "encompasses both written communications and telephone communications." But the Kerfoots do not allege any debt collection attempts in their complaint—by mail or telephone—that would have been timely. Therefore, the FDCPA claim is dismissed.

### C. Intentional Infliction of Emotional Distress

LoanCare moves to dismiss the Kerfoots' claim of Intentional Infliction of Emotional Distress on the grounds that the Complaint does not "specifically state what intentional acts LoanCare committed to cause emotional distress" and the Kerfoots "also failed to allege any facts supporting their bare assertions that they suffered emotional distress."

Georgia courts recognize the tort of intentional infliction of emotional distress for intentional or reckless conduct that is "so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Ingram v. JIK Realty Co., Inc.*, 404 S.E.2d 802, 804–05 (Ga. Ct. App. 1991). A plaintiff pursuing an IIED claim under Georgia law faces a "stringent" burden. *Id.* at 804."Liability has been found only where the defendant's conduct was 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Higdon v. Jackson*, 393 F.3d 1211, 1222 (11th Cir. 2004) (quoting *Kaiser v. Tara Ford, Inc.*, 546 S.E.2d 861, 868 (Ga. Ct. App. 2001)). To establish such a claim, the claimant must show the defendant's conduct was (1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of emotional distress. *Wilcher v. Confederate Packaging, Inc.*, 651 S.E.2d 790, 792 (Ga. Ct. App. 2007). "Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the Court." *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1381 (N.D. Ga. 2004) (citing *Yarbray v. S. Bell Telephones & Telegraph Co.*, 409 S.E.2d 835 (Ga. 1991)).

The Kerfoots have sufficiently stated a claim for IIED. Although a lawful debt collection rarely rises to an IIED claim, *Latimore v. Gateway Retrieval, LLC*, No. 1:12-cv—286, 2013 WL 791258, at *7 (N.D. Ga. Feb. 1, 2013) (collecting cases), Georgia courts have held a jury can infer IIED from a wrongful foreclosure and actions related to a

wrongful foreclosure, *DeGolyer v. Green Tree Servicing, LLC*, 662 S.E.2d 141, 147–48 (Ga. Ct. App. Apr. 18, 2008). The allegations in this case fall closer to the wrongful foreclosure cases than cases involving aggressive attempts to collect a lawful debt. The Complaint states that, despite numerous notifications about the unlawfulness of the Lend America loan, LoanCare hounded the Kerfoots with letters and calls demanding payment at the threat of foreclosure. Allegedly because of the fraudulent loan and attempts to collect it, the Kerfoots went into default on the CIT Group loan. The Court cannot say at this stage that the allegations do not plausibly state an IIED claim.

### D. Real Estate Settlement Procedures Act

LoanCare also moves to dismiss the Kerfoots' claim that it did not respond to two or more borrower inquiries in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). Under § 2605(e) of RESPA, a loan servicer, upon receipt of a qualified written request regarding the accuracy of an account, must investigate the claim and correct the error or provide a written response explaining why the account is accurate. *Id.* § 2605(e)(1)(A). A "qualified written request" is defined as a written correspondence that allows the servicer to identify the account and identity of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2506(e)(1)(B). RESPA violations may give rise to non-pecuniary damages, such as emotional distress. *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010).

The Complaint's allegations are sufficient to allege a RESPA violation. The Complaint alleges that the Kerfoots' attorney, Christopher Solomon, wrote LoanCare a letter, attached to the Complaint as an exhibit, explaining that the CIT Group loan was never

11

paid off. Likewise, the Kerfoots also wrote LoanCare a certified letter disputing the propriety of the loan. Despite these letters, the Complaint alleges that LoanCare continued its collection efforts. It is reasonable to infer from these allegations that LoanCare never responded to these inquiries or corrected the error. The Kerfoots claim they suffered severe mental pain and anguish from these collection efforts. The Complaint adequately states a RESPA violation.

### E. Breach of Contract

LoanCare also moves to dismiss the breach of contract claim on the ground that the Kerfoots have not alleged any facts showing they are third-party beneficiaries to the servicing contract between Ginnie Mae and LoanCare. The Court agrees.

The Kerfoots have alleged in the barest legal conclusions that they were third-party beneficiaries and that LoanCare violated some unspecified provisions of the contract. To assert a third-party beneficiary breach of contract claim under Georgia law, however, the plaintiff must be the intended beneficiary of the contract. *Finch v. Bank of America, N.A.*, No. 3:12-cv-14 (CAR), 2012 WL 1188275, at *2 (M.D. Ga. Apr. 9, 2012) (citing *Danjor, Inc. v. Corp. Constr., Inc.*, 613 S.E.2d 218, 220–21 (Ga. Ct. App. 2005). By failing to identify violated contract terms or provisions that confer standing, the Kerfoots have failed to state a claim for relief. *See id.* ("Plaintiff has failed to identify any express contractual provision creating an actionable third-party beneficiary right."); *Jones v. FDIC*, No. 5:12-cv-176 (MTT), 2012 WL 6115374, at *6 (M.D. Ga. Dec. 10, 2012) ("[T]he Plaintiff cannot survive a motion to dismiss if he does not assert specific provisions of the contract that were breached."). The Kerfoots allege only that they were third-party beneficiaries and that "written agreements provided . . . that Loan Care

would honestly, fairly, and reasonably conduct its servicing responsibilities," but failed to do so. This is insufficient to survive a motion to dismiss.

### F. Attorneys' Fees

LoanCare argues the Kerfoots' claim for attorneys' fees should be dismissed because there is no evidence under O.C.GA § 13-6-11 that it acted in bad faith, has been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. But regardless of whether LoanCare has acted in bad faith, the Court cannot, at the motion to dismiss stage, rule as a matter of law that LoanCare has not been stubbornly litigious or caused the Kerfoots unnecessary trouble and expense. *See Patriot General Ins. Co. v. Krebs*, No, 1:12-cv-0997-RWS, 2012 WL 2990067, at *7 (N.D. Ga. Jul. 20, 2012). Additionally, as the Kerfoots point out, RESPA and the Georgia RICO Act provide attorney's fees. 12 U.S.C. § 2605(f)(3); O.C.G.A. § 16-14-6(c).

Therefore, this ground in the motion to dismiss lacks merit.

### G. Punitive Damages

Finally, LoanCare moves to dismiss the Kerfoots' claim for punitive damages because their substantive claims must be dismissed and there is no evidence of willful misconduct, malice, fraud, wantonness, oppression, or conscious indifference. But because the Court disagrees that all of the substantive claims must be dismissed, and those claims support an inference of willfulness, this ground is unpersuasive. Accordingly, the motion is denied as to this ground.

### IV. CONCLUSION

For those reasons, LoanCare's motion is **GRANTED in part** and **DENIED in part**, as follows: the Kerfoots' RICO claim premised on mail and wire fraud and their

13

claim under the Fair Debt Collection Practices Act are **DISMISSED**. The rest of the claims shall proceed.

**SO ORDERED**, this   25th   day of October 2013.

                                               /s/ W. Louis Sands                
                                        **THE HONORABLE W. LOUIS SANDS,**
                                        **UNITED STATES DISTRICT COURT**