IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JAMES L. KERFOOT, SYLVIA F. KERFOOT, and PAUL CAMES, as Trustee in Bankruptcy for James and Sylvia Kerfoot, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Case No.: 1:13-cv-33 (WLS) |
| FNF SERVICING, INC. (D/B/A LOAN CARE SERVICING CENTER, INC.), a foreign corporation, | : : : : | |
| Defendant. | : : | |

## ORDER

Currently pending in this case are a Motion to Quash or Modify Subpoena filed by the third-party United States Department of Housing and Urban Development (hereinafter "Ginnie Mae") (Doc. 49) and a Motion to Compel Production filed by Plaintiffs (Doc. 58). Additionally, the United States, on behalf of Ginnie Mae, has filed a Motion to Seal the Declaration of Rebecca Lynn Mock (Doc. 65). The Court now considers these Motions.

## PROCEDURAL BACKGROUND

The Parties and non-Parties in this case have been embroiled in discovery disputes since before discovery even formally began. This suit was filed by Plaintiffs James and Sylvia Kerfoot against Defendant FNF Financing, Inc., doing business as Loan Care Servicing Center, Inc. (Loan Care), for its attempts to collect payment on an allegedly fraudulent loan. The Kerfoots, now through Natasha Golden, administratix of Sylvia Kerfoot's estate, and Joy Webster, the Trustee in Bankruptcy for the Kerfoots (Doc. 36), assert claims against LoanCare under the Georgia RICO statute, the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, and for breach of contract and intentional infliction of emotional distress.

1

Plaintiffs seek materials related to home loans serviced by LoanCare from either Defendant LoanCare or non-party federal government entity Ginnie Mae. Following a telephone conference with the Parties and Ginnie Mae, the Court denied as premature Plaintiffs' first two motions to compel and ordered the Parties to proceed as though all requests for production and third-party subpoenas *duces tecum* were served on September 19, 2014, resetting the deadlines for responding to such requests and for filing any resulting motions accordingly.

Ginnie Mae has now filed a Motion to Quash and/or Modify the Document Subpoena with which it has been served. (Doc. 49.) LoanCare and Plaintiffs have responded to this Motion, and Ginnie Mae has filed a reply. (Docs. 54, 55, 62.) Plaintiffs have also filed a Motion to Compel Production (Doc. 58) to which LoanCare and Ginnie Mae responded (Docs. 61, 64).

## DISCUSSION

### I. Ginnie Mae's Motion to Seal

The United States, on behalf of Ginnie Mae, has filed a Motion to File under Seal the declaration of Rebecca Lynn Mock (Doc. 65). The United States has not yet filed the Mock Declaration but apparently desires to do so because it cites the Mock Declaration in its Motion to Quash and/or Modify. (Doc. 65-1 at 1-2.) Because the Court herein rules on the Motion to Quash and/or Modify without relying on the Mock Declaration, the Court **DENIES** as moot the United States' Motion to File under Seal (Doc. 65). Should the Parties seek to file this declaration later in the course of this litigation, the Court directs the Parties to note the United States' statement that "LoanCare also stated that it would withdraw its confidentiality designation to the extent it was necessary for a non-sealed filing." (Doc. 65-1 at 2.)

### II. Ginnie Mae's Motion to Quash and/or Amend and Plaintiffs' Motion to Compel

Plaintiffs served Ginnie Mae, a non-party federal government entity with a document subpoena seeking three types of documents relating to loans made to 18 Georgia borrowers (the "Georgia Materials") in addition to the loan made to Plaintiffs: (1) chronological

communications logs, (2) GNMA communications logs, and (3) all correspondence between LoanCare and the borrowers. The 18 Georgia borrowers are not parties to this case. LoanCare has already produced a complete set of documents relating to the loan made to Plaintiffs. Additionally, Ginnie Mae issued an agency determination under its *Touhy* regulations allowing production of a limited set of documents relating to two additional loans, the Mock and Carter loans referenced in the Amended Complaint. Ginnie Mae now seeks to quash or modify the subpoena seeking the Georgia Materials based on its determination that Plaintiffs failed to comply with HUD's *Touhy* regulations. HUD determined that Plaintiffs' request did not comply with the *Touhy* regulations because it found that all of the Georgia Materials are available from another source –LoanCare and Selene Finance --and it determined that the relevance of the Georgia Materials is tenuous and the burden of complying with the subpoena far outweighs any benefit the materials could have to the Plaintiffs.

      5 U.S.C. Section 301 allows executive department heads to limit how employees disseminate information gained in the performance of their official duties by promulgating what are known as *Touhy* regulations. *U.S. ex. Rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Agency determinations under *Touhy* regulations are subject to the Administrative Produce Act's "arbitrary and capricious" standard. 5 U.S.C. § 706(2)(A); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

      The U.S. Department of Housing and Urban Affairs' (HUD) *Touhy* regulations apply to Ginnie Mae, which is housed within that Department. *See* 12 U.S.C. § 1717(a)(2)(A). HUD's *Touhy* regulations are codified at 24 C.F.R. §§ 15.201 – 15.206. The regulations set forth the procedures to be followed "when demand is issued in a legal proceeding among private litigants for the production or disclosure of any material, whether provided through production of materials or provision of testimony." § 15.201. The regulations state that neither HUD nor any employee of HUD shall comply with a production demand without the prior approval of the Authorized Approving Official. § 15.202. The regulations require that production demands:

> (1) Be submitted in writing . . . no later than 30 days before the date the material or testimony is required; (2) State, with particularity, the material or

3

testimony sought; . . . (4) State whether the production of such material . . . could reveal classified, confidential, or privileged material; (5) Summarize the need for and relevance of the material or testimony sought in the legal proceeding and include a copy of the complaint, if available; (6) State whether the material or testimony is available from any other source and, if so, state all such other sources; . . . (9) State why the production of the material . . . is appropriate under the rules of procedure governing the legal proceeding for which it is sought (e.g. not be unduly burdensome or otherwise inappropriate under the relevant rules governing discovery); and (10) Describe how producing such material or providing such testimony would affect the interests of the United States.

§ 15.203 (excluding portions related only to testimony). Section 15.204(a)(2) sets forth nine standards to be applied in considering a request for factual material. Section 15.204(b) provides that requesters shall be provided notice and reasons for any denial or condition approval, and Section 15.204(c) sets forth various possible conditions or limitations the Authorized Approving Official may impose on the production.

Here, Ginnie Mae, through HUD, made a final agency determination that Plaintiffs had not complied with the *Touhy* regulations with respect to their request for the Georgia Materials except as to the Plaintiffs' loan and the Carter and Mock loans. The Court does not herein review HUD's determination under the arbitrary and capricious standard because the Court finds that HUD's determination involved only whether Ginnie Mae would produce the Georgia Materials to Plaintiffs, not whether Ginnie Mae would authorize LoanCare to produce the Georgia Materials to Plaintiffs. The Court finds, for the following reasons, that compelling HUD/Ginnie Mae to authorize LoanCare to produce the Georgia Materials and compelling LoanCare to produce the Georgia Materials resolves the instant discovery dispute without having to consider whether HUD's *Touhy* determination was arbitrary and capricious.

One reason HUD denied Plaintiffs' request for the Georgia Materials was that it found that the Georgia Materials were available elsewhere, specifically from LoanCare. Plaintiffs and LoanCare contend, however, that LoanCare cannot release the documents Plaintiffs seek without authorization from Ginnie Mae. (Docs. 54 at 4; 55 at 2-3.) Specifically in an April 8, 2014 letter from Ginnie Mae to LoanCare, Ginnie Mae made this clear,

4

referencing the Privacy Act of 1974, "Ginnie Mae does not authorize LoanCare to release any information pertaining to other borrowers, which is the sole property of Ginnie Mae, in response to [Plaintiffs'] February 25, 2014 demand for the production of documents." (Doc. 56-1 at 1.) Ginnie Mae contends that its relationship with LoanCare has changed since April 8, 2014 and that it no longer directs or controls LoanCare "with regard to all the documents at issue." (Doc. 62 at 7.) LoanCare, however, understands the issue differently, believing that it does not possess the authority to release the Georgia Materials without Ginnie Mae's authorization. (Doc. 55 at 2-4.)

HUD also determined that the relevance and benefit of the Georgia Materials to Plaintiffs' case was far outweighed by the burden of production on HUD. The Court finds, however, that if Ginnie Mae authorized LoanCare to produce the Georgia Materials, Ginnie Mae's burden would only consist of reviewing those materials to ensure that any information that Ginnie Mae believes should not be disclosed is redacted. Furthermore, the Court finds that even Ginnie Mae admits that a burden to review the documents produced by LoanCare would be voluntarily assumed. Ginnie Mae states that it has "voluntarily cooperated" with LoanCare in reviewing the Mock and Carter documents to ensure they are properly redacted. Ginnie Mae argues that if LoanCare were to produce all of the Georgia Materials, this voluntary cooperation would become too burdensome. (*Id.* at 8.) The Court finds that any burden resulting from voluntary cooperation is a burden voluntarily assumed. The Court notes that in its response to Plaintiffs' Motion to Compel, Ginnie Mae states that any such review of the remaining Georgia Materials "must take place." (Doc. 64 at 2.) The Court cannot find that such review is mandatory with regard to the remaining Georgia Materials where it is only "voluntary" with regard to the Carter and Mock loan materials.

The Court notes that LoanCare neither opposes nor supports Ginnie Mae's Motion to Quash but rather emphasized in its Response that it could not release the Georgia Materials without Ginnie Mae's permission. (Doc. 55 at 2-3.) Similarly, LoanCare opposes Plaintiffs' Motion to Compel Ginnie Mae to either produce the Georgia Materials or to provide LoanCare authorization to produce the Georgia Materials only to the extent that Plaintiffs seek: to compel LoanCare to release documents it is not authorized by Ginnie Mae

5

to release; documents that are unrelated to the "double billing" issue; and unredacted personal identifying information of third parties.

The Court therefore finds that LoanCare does not oppose producing the Georgia Materials altogether. The Court also finds that the reasons Ginnie Mae provided for denying Plaintiffs' production request under its *Touhy* regulations would be essentially moot if Ginnie Mae authorized LoanCare to produce the Georgia Materials. Furthermore, since Ginnie Mae is only "voluntarily cooperat[ing]" (Doc. 62 at 8) with LoanCare to review and redact the materials, any burden resulting from that cooperation is also voluntary.

The Court therefore **GRANTS** the United States' Motion to Quash and/or Modify (Doc. 49) and **GRANTS** Plaintiffs' Motion to Compel (Doc. 58). Rather than arbitrating the details of LoanCare and Ginnie Mae's current contractual relationship, the Court **ORDERS** the U.S. Department of Housing and Urban Development to provide LoanCare authorization to release the Georgia Materials, including the Carter and Mock loans, **no later than five (5) days** after entry of this Order. The Court also **ORDERS** LoanCare to produce such documents **no later than forty-five (45) days** after entry of this Order subject to the following conditions and limitations:

> (1) LoanCare shall not be required to produce monthly billing and escrow statements unless they relate specifically to the "double billing issue;"
> (2) LoanCare shall redact personal identifying information such as names, addresses, and social security numbers from the Georgia Materials;
> (3) the Parties shall comply with the Amended Protective Order (Doc. 52) and, to the extent the Parties desire to further amend this order, they shall submit to the Court **no later than seven (7) days** after entry of this Order a proposed amended protective order;
> (4) LoanCare shall provide the redacted Georgia Materials to Ginnie Mae for its review prior to providing the Georgia Materials to Plaintiffs. Ginnie Mae shall have **twenty-one (21) days** after receipt of the redacted Georgia Materials to review them and make any further redactions before returning them to LoanCare for LoanCare's disclosure to Plaintiffs. If Ginnie Mae does not do so within twenty-one (21) days, LoanCare shall proceed with disclosure to Plaintiffs.

The Court notes that the deadline for fact discovery in this case expired on Friday, November 14, 2014. The Court therefore **ORDERS** the Parties to submit a joint proposed amended scheduling order no later than **seven (7) days** after entry of this

6

Order setting forth new deadlines for fact discovery, dispositive motions, and *Daubert* motions relating to dispositive motions. Finally, the United States' Motion to File under Seal (Doc. 65) is **DENIED** as moot because the Court has resolved the Motion to Quash and/or Amend without the need to reference the Mock declaration.

     **SO ORDERED**, this 21st day of November, 2014.

                                       **/s/ W. Louis Sands**
                                       **W. LOUIS SANDS, JUDGE**
                                       **UNITED STATES DISTRICT COURT**